```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

PRESTON POWELL,                  :
                                 :
   Plaintiff,                    :
                                 :
v.                               :     Civil No. 3:04-CV-92(RNC)
                                 :
SPOT-ON NETWORKS, LLC,           :
                                 :
   Defendant.                    :

## RULING AND ORDER

Plaintiff Preston Powell brings this diversity case against his former employer, Spot-On Networks, LLC, alleging breach of a written employment contract.[1]  Defendant has moved for summary judgment.  For the reasons summarized below, the motion is denied.

## I. Background

The pleadings, depositions, affidavits and other exhibits on file, viewed most favorably to the plaintiff, show the following. In July 2003, defendant's president and chief operating officer, Nicolas Reisini, orally agreed with plaintiff that the defendant, a start-up company in the telecommunications field, would employ him for three years at an annual base salary of $80,000.  Reisini invited the plaintiff to prepare a letter memorializing the terms of the agreement and gave him a form letter to use as a model.

---

[1] The complaint also contains a statutory claim for failure to pay wages, see Conn. Gen. Stat. §§ 31-71a, et seq., but this claim has been abandoned.

Plaintiff promptly drafted a letter using the model provided by Reisini, then gave it to him for his review.  The letter provided that defendant would employ plaintiff for three years at an annual base salary of $80,000, as previously agreed.  In addition, the letter gave the plaintiff stock in the company, an opportunity to earn sales commissions, and a unilateral right to terminate the contract on 30 days' notice.  Reisini looked at the letter, then signed it.

Though plaintiff was hired to oversee installations, he accepted an assignment to work in sales.  Despite reasonably diligent efforts, he was unable to make any sales.  Nobody else in the company was able to make any sales either.  This led to cash flow problems.

In November 2003, in a meeting with Richard Sherwin, defendant's chief executive officer, and Reisini, plaintiff was informed that the company was restructuring and that, as a result, his salary was going to be reduced to $36,000 per year.  Sherwin stated that the salary reduction was not negotiable.

After the meeting, plaintiff contacted Lori Beauregard, a human resources executive, regarding the salary reduction.  She told him that he was an at-will employee and that the company had a right to reduce his salary.  Plaintiff asked whether she had read his employment agreement and she replied that she had not.  She then read the letter agreement, told the plaintiff she was

2

surprised to find that it indicated he was not an at-will employee, and faxed the letter to Reisini.

On December 3, 2003, Sherwin sent the plaintiff an email stating that he was disappointed with the plaintiff's sales performance and, as a result, would be reducing his salary. Later that day, Reisini spoke with plaintiff about renegotiating his employment agreement. Reisini offered the plaintiff at-will employment with an annual base salary of $50,000, plus commissions. When asked to memorialize the offer in writing, Reisini sent the plaintiff an email restating these terms and adding that "[a]ll other terms of our letter will remain in effect." Reisini suggested that documents be drafted to effect "these changes." Plaintiff later informed him that the terms were unacceptable.

On December 11, 2003, plaintiff's attorney sent Reisini a letter concerning plaintiff's employment agreement. The letter stated that the company's nonnegotiable decision, announced at the November meeting, to reduce the plaintiff's salary, constituted a material breach, and, accordingly, that he was no longer obligated to perform his obligations under the agreement. The letter further stated that the company's allegation of poor performance by the plaintiff was false.

On December 12, 2003, in an email to the plaintiff, Sherwin characterized plaintiff's performance as the "lowest" of the

sales staff.  The email stated that unless the plaintiff successfully concluded four outstanding sales proposals by January 9, 2004, his compensation would be restructured as they had previously discussed.

On January 8, 2004, the day before the deadline, plaintiff left a letter on Reisini's desk.  The letter stated that, "[s]ince there has been no resolution to my letter concerning your breach of my contract, I can only consider this to be your termination of my employment. . . ."  Sherwin responded by sending the plaintiff a letter stating that the company was accepting his resignation.  This suit followed.

II. Discussion

Summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court must review the record as a whole, credit all evidence favoring the nonmovant, give the nonmovant the benefit of all reasonable inferences, and disregard all evidence favorable to the movant that a jury would not have to believe.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).

Breach of Contract

Defendant contends that it is entitled to summary judgment on the breach of contract claim because (1) there was no valid contract, (2) the contract was not breached and (3) plaintiff

elected to pursue a remedy inconsistent with an action for breach.  Defendant's arguments are unavailing because they fail to take account of evidence creating genuine issues of material fact.

Whether parties have entered into an enforceable contract is a question of fact, Presidential Capital Corp. v. Reale, 231 Conn. 500, 507 (1994), to be resolved on the basis of all the evidence.  Richter v. Danbury Hosp., 60 Conn. App. 280, 288 (2000).  Viewing the evidence fully and most favorably to the plaintiff, reasonable jurors could find that the parties entered into a binding contract reflected in the signed letter.  It is undisputed that Reisini, acting on behalf of the company, orally agreed that the plaintiff would be employed for three years at an annual salary of $80,000, then signed the letter, which contains those terms.  Defendant emphasizes that the letter contained additional terms that Reisini had not agreed to and was unaware of.  But a jury would not be compelled to find that the additional terms were inserted without Reisini's knowledge or consent.  The record shows that in December 2004, when Reisini sought to renegotiate the contract, he specifically stated that those terms would remain in effect.  A jury could reasonably infer from this that the additional terms were part of the parties' original understanding.

An anticipatory breach of contract occurs when the breaching party repudiates his duty to perform before performance is due. Cottman Transmission Sys., Inc. v. Hocap Corp., 71 Conn. App. 632, 639 (2002).  It permits the non-breaching party to disregard its remaining duties of performance and to initiate an action for breach without having to await the time of performance.  Id.

Plaintiff contends that defendant breached the employment contract when it informed him that his salary would be reduced. It is undisputed that plaintiff was told that the pay reduction was nonnegotiable.  Plaintiff also alleges that Sherwin told him his salary was to be $36,000, see Pl.'s Dep. at 183-84, much less than the $80,000 specified in the signed letter.  These facts could permit a reasonable jury to find that defendant repudiated the contract on November 17 by verbally manifesting its intent not to perform.

Defendant contends that, even if it did repudiate the contract, it is entitled to summary judgment because plaintiff elected to waive the repudiation by continuing to work and collect his full salary and benefits after the November 17 meeting.  This argument has some force.

After the November meeting, the plaintiff did nothing for two weeks.  On December 3, he contacted human resources to discuss the effect of the contract on the defendant's proposed restructuring of his compensation.  Plaintiff then met with his

supervisor to discuss the restructuring.  It was not until December 11 that plaintiff's attorney sent the letter stating that the plaintiff considered the defendant to be in breach and was considering litigation.  Notwithstanding the strongly worded letter, plaintiff continued to work and collect his full salary and benefits until January 8, the day before his compensation was going to be restructured based on his inability to meet the sales targets set by Sherwin.  See Litton Indus. Credit Corp. v. Catanuto, 175 Conn. 69, 75 (1978)("Even though . . . [a party] expressly states that he intends to reserve a right, he will, nevertheless, lose it if he takes an inconsistent course.") (internal quotation omitted); Bigda v. Fischbach Corp., 898 F. Supp. 1004, 1013 (S.D.N.Y. 1995)("where a party merely objects to an alleged breach but continues to perform and to accept the benefits of the breaching party's performance under the contract, he will have elected to continue the contract."), aff'd without opinion at 101 F.3d 108 (2d Cir. 1996) (applying New York law); see also Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258-59 (2d Cir. 2002).

    Nonetheless, I conclude that the defendant is not entitled to summary judgment.  The doctrine of election of remedies is equitable in nature. See Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc., 225 Conn. 804, 809 n.6 (1993).  The issue, then, is not simply whether the plaintiff continued to

work and collect full pay and benefits after the November 17 meeting.  What must be determined is whether it would be inequitable to permit the plaintiff to recover based on the alleged anticipatory breach because, when faced with it, he (1) manifested an intent to elect to continue to treat the contract as valid, (2) which the defendant relied on to its detriment.  See Conn. Light & Power Co. v. DaSilva, 231 Conn. 441, 449 (1994)(a party who has chosen one remedy may not pursue a different remedy if "the remedies are inconsistent and the other party materially changes his position in reliance on the manifestation [of the choice].")(quoting Restatement (Second) of Contracts § 378 (1981)).  These are questions of fact.  See Bank of Boston v. Scott Real Estate, Inc., 40 Conn. App. 616, 623-24 (1996)(affirming finding that defense based on election of remedies presented no material issues of fact).  On the record before me, viewed fully and most favorably to the plaintiff, I am not persuaded that a jury would have to resolve either of these questions in favor of the defendant.

    D. Breach of the Implied Covenant of Good Faith and Fair Dealing

In Connecticut, a contract carries with it an implied covenant of good faith and fair dealing, that, when violated in bad faith, is actionable in tort.  Buckman v. People Express, Inc., 205 Conn. 166, 170-71 (1987).  Bad faith implies both

8

"actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."  Habetz v. Condon, 224 Conn. 231, 237 (1992)(internal quotation omitted).  Whether a party acted in bad faith is a question of fact.  Id. at 237 n.11.

Defendant contends that it is entitled to summary judgment on this claim because there is no evidence that it acted in bad faith.  Plaintiff alleges, however, that defendant justified reducing his pay by falsely accusing him of inadequate performance.  This allegation is supported by evidence that his performance was similar to that of his peers, and that he received no complaints regarding his performance before the initial discussions regarding his reduction in pay.  In addition, plaintiff alleges that defendant only began to build a record of his poor performance after it realized he was not an at will employee.  This allegation is consistent with the chronology of relevant events and has not been refuted.  On this record, viewed in a manner most favorable to the plaintiff, a jury could reasonably find that the defendant acted in bad faith.

III. Conclusion

Accordingly, defendant's motion for summary judgment [Doc. #49] is hereby denied.

9

So ordered.

Dated at Hartford, Connecticut this 31st day of March, 2006.

                                                \s\
                                      Robert N. Chatigny
                              United States District Judge